IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS RODRIGUEZ RAMOS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF EDUCATION FOR THE COMMONWEALTH OF PUERTO RICO, ET AL., <br><br> Defendants. | CIVIL NO.  11-1653 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiffs Luis Rodríguez Ramos, Juan Alexis Del Valle Meléndez, their respective spouses and conjugal partnerships, and plaintiffs Elizabeth Ortega Medina, Carmen Rosa Martínez, Josefina Arroyo Saurí and María T. Toste Arana (hereafter "plaintiffs" or identified by their respective last names when applicable) filed a Complaint for civil rights violations under Title 42, United States Code, Section 1983.  Plaintiffs allege being subject of discrimination based on their political affiliation while employed at the Department of Education of the Commonwealth of Puerto Rico (hereafter "DE").  (Docket No. 1).

Defendants are the DE, plaintiffs' employer, and other co-defendants who were officers of the DE, who are sued in their individual and official capacities, as follows: Jesús Rivera-Sánchez, Secretary of the DE (hereafter "Rivera-Sánchez"), Carlos Chardón, former Secretary of the DE (hereafter "Chardón"), Brenda Virella-Crespo, Director of the Legal

Division of the DE (hereafter "Virella"), Sonia Dalila Román, Special Aide in the DE (hereafter "Román"), Magaly Rivera Rivera, Regional Director of Caguas in the DE (hereafter "Rivera"), María de los Angeles Lizardi Valdes, Human Resources Director in the DE (hereafter "Lizardi"), Carmen Yolanda Cartagena, Special Aide in the DE (hereafter "Cartagena"), Carmen Cepeda Ramos, Special Aide in the DE (hereafter "Cepeda" and/or "defendants" or their respective last names as above cited).

The parties consented to jurisdiction by a Magistrate Judge, for which the case was referred on December 5, 2011 for all further proceedings including the pending motions, the jury trial and the entry of judgment.  (Docket Nos. 49 and 50).

Defendants filed separate, joint, individual and even supplemental motions[1] to dismiss, to which plaintiffs have submitted their oppositions.  Thereafter the parties were allowed to file replies and sur-replies, which are now ripe for disposition, to wit:

(A)  Motion to Dismiss plaintiffs' Section 1983 by defendant DE on Eleventh Amendment grounds (Docket No. 8);

(B)  Motion to Dismiss by defendant Rivera-Sánchez (Docket No. 9), Response in Opposition (Docket No. 17);

©  Motion to Dismiss by defendants DE, Lizardi, Chardón, and Virella under R. 12(b)(6) and qualified immunity (Docket No. 31), Response in Opposition (Docket No. 38), Reply to Response (Docket No. 48);

---

[1]  The supplemental motions were used by the parties to add matters not previously discussed in the original requests and, at times, to file excess pages, fragmenting their submissions and reiterating other parties' contention, without much argumentation. The practice of supplemental motions is not deemed effective nor has assisted the Court. The parties are admonished that, if future dispositive motions are filed and follow this approach, the pleadings may be stricken.

(D)   Supplemental Motion to Dismiss and Joinder by Rivera-Sánchez to Docket No. 31 (Docket No. 35), Supplemental Response in Opposition (Docket No. 47), Supplemental Opposition (Docket No. 57);

(E)   Motion to Dismiss Combined by defendants Román, Cartagena (Docket No. 39), Supplemental Opposition (Docket No. 47);

(F)   Supplemental Motion to Dismiss by defendants Rivera-Sánchez (Docket No. 41), Supplemental Response in Opposition (Docket No. 47).

After the case was referred to this Magistrate Judge, defendants filed an additional motions to dismiss:

(G)   Motion to Dismiss by defendant Cepeda (Docket No. 54), Supplemental Opposition (Docket No. 55), Reply (Docket No. 60).

Since the issues raised by the parties are intermingled and at times repetitious, we discuss the averments of each motion and their relevant legal contentions, as applicable.

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissal may be warranted for failure to state a claim upon which relief can be granted.[2]

To elucidate a motion to dismiss the Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory."  Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n.

---

[2]   Said rule provides:
... (b) How to Present Defenses.  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:
....
... (6) failure to state a claim upon which relief can be granted ...

2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss.  Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

The Supreme Court most recent opinion changes the standard for a motion to dismiss so that plaintiff will now have to include more information in the pleadings if he/she wants to survive a 12(b)(6) motion.  *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007).[3]   The First Circuit has cited to this decision and has already noted this new standard in Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), copied in part below:

> At the outset, we note that even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007). In so doing, the Court disavowed the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Twombly, 127 S. Ct. at 1969. The Court found that the "no set of facts" language, if taken literally, would impermissibly allow for the pleading of "a wholly conclusory statement of [a] claim," and that "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 1968, 1969.

Similarly under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the factual statements of the complaint are considered true, indulging every reasonable inference helpful to plaintiff's cause.  However, the tenet that a court must accept as true all the

---

[3]   No heightened fact pleading of specifics is required but only enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic, 127 S.Ct. at 1974.

allegations contained in a complaint is inapplicable to legal conclusions and mere recitals

of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.  Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949 (2009).

## LEGAL ANALYSIS

**A.      DE's Motion to Dismiss - Eleventh Amendment (Docket No. 8).**

On September 6, 2011, defendant DE filed a Motion to Dismiss under Fed.R.Civ.P.

12(b)(6) in that, as an instrumentality of the Commonwealth of Puerto Rico, it is entitled

to Eleventh Amendment immunity as to plaintiffs' Section 1983 claim. (Docket No. 8).  The

record shows plaintiffs did not file an opposition to this legal contention.

The Eleventh Amendment reads:

> The Judicial power of the United States shall not be construed to extend to
> any suit in law or equity, commenced or prosecuted against one of the United
> States by Citizens of another State, or by Citizens or Subjects of any Foreign
> State. U.S. Const. Amend. XI.

A civil rights action would be barred by Eleventh Amendment when an employer

qualifies as an *alter ego* of a state instrumentality or as a governmental agency.  Figueroa-

Rodríguez v. Aquino, 863 F.2d 1037 (1st Cir. 1988).  C. Wright, A. Miller & E. Cooper, 13

*Federal Practice & Procedure* §3524.  The Eleventh Amendment, which deprives federal

courts of power to hear claims for damages as to any state or their *alter egos,* has been held

to apply to Puerto Rico.  *See*  Ramírez v. Puerto Rico Fire Service, 715 F.2d 694 (1st Cir. 1993);[4] *see also* Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority, 991 F.2d 935 (1st Cir. 1993).

It is uncontested the DE, defendant herein in a Section 1983 claim, is a governmental agency of the Commonwealth of Puerto Rico.  The Court of Appeals for the First Circuit has assumed, without discussion, the DE's Eleventh Amendment immunity is coextensive with that of the Commonwealth of Puerto Rico.  Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 34 (1st Cir. 2006); Marín-Piazza v. Aponte-Roque, 873 F.2d 432, 437 n.6 (1st Cir. 1989); Fernández v. Chardón, 681 F.2d 42, 59 (1st Cir. 1982); Litton Indus., Inc. v. Colón, 587 F.2d 70, 72 (1st Cir. 1978).

Succinctly, the DE is not to be considered a person for purposes of Section 1983 relief.  Second, the Commonwealth of Puerto Rico has not consented to be sued nor has Congress abrogated Eleventh Amendment immunity as to Section 1983 cases.  Finally, as to any supplemental state claims raised in the Complaint on state law and pendent jurisdiction, the Commonwealth of Puerto Rico has allowed for claims to be presented only in state court and has not waived its sovereign immunity for such suits to be raised before federal courts or any other jurisdiction.

Thus, and in the absence of any objection from plaintiffs, defendant DE's Motion to Dismiss under Eleventh Amendment is GRANTED. (Docket No. 8).

---

[4] There is an exception to Eleventh Amendment immunity when prospective injunctive relief is requested. Ramírez, 715 F.2d at 697.  Other exceptions entail when a state has waived its immunity, Congress has abrogated state immunity or other constitutional imperatives.

Luis Rodríguez-Ramos et al., v. Dept. of Education, et al
Civil No. 11-1653 (CVR)
Opinion and Order
Page 7

## B.    Defendant Rivera-Sanchez' Motion to Dismiss (Docket No. 9).

Co-defendant Rivera-Sánchez requests dismissal for plaintiffs have failed to establish claims under the Equal Protection and Due Process clauses of the Fourteenth Amendment. Rivera-Sánchez also claims, as to being sued in his official capacity, that he is entitled to immunity under the Eleventh Amendment.  Dismissal is also claimed for pendent state claims for money damages under Art. 1803 of the P.R. Civil Code. (Docket No. 9).

Co-defendant Rivera-Sánchez argues plaintiffs have claimed their Section 1983 action for being deprived of their due process right when removed from the positions of Auxiliary Superintendents to the positions of School Directors.  Co-defendant Rivera-Sánchez submits plaintiffs still work for the DE, have not been deprived of their salaries nor suspended from employment. Co-defendant further avers plaintiffs have not lost their jobs and, thus, property rights for continued employment, having only different functions and duties, do not entail a violation of due process or a deprivation of any property interest that may result in a Due Process claim.  Co-defendant Rivera-Sánchez also claims plaintiffs' claims under Equal Protection clause of the Fourteenth Amendment should also be dismissed for plaintiffs must  establish having been treated differently to others similarly situated and being subject of intentional discrimination.  Co-defendant Rivera-Sánchez alleges plaintiffs may not submit an Equal Protection claim and also assert a parallel claim of First Amendment violation for the same discriminatory conduct, that is political discrimination in employment.

Plaintiffs filed their opposition to co-defendant Rivera-Sánchez' motion summarized above.  Plaintiffs filed their claim for being career employees in the DE holding positions

as Auxiliary Superintendents.  Plaintiffs are known members of the Popular Democratic Party (hereafter "PDP") who claim being object of discriminatory short-of-dismissal demotions to favor members of the opposing party, the New Progressive Party (hereafter "NPP").  Plaintiffs were taken out of their positions under threat of otherwise dismissal and reassigned to School Director positions.  Thereafter, defendants created new positions, classified them as trust position, and appointed, without public announcement, employees affiliated with the NPP.  These new trust positions were parallel to the positions and duties previously performed by plaintiffs, none of whom where appointed to these new positions and who also claim were relegated to subordinate roles in violation of due process, equal protection and their First Amendment rights because of their political affiliation.

The Complaint submits originally there were fifty six (56) School Superintendent career positions, which were to be reduced to twenty eight (28), without explanation and without consideration of seniority as to who shall occupy these positions.  Of those selected and appointed for the new positions, all except three (3) were NPP affiliates.  Those three (3) were PDP affiliates who indicated publicly to have supported or voted for the NPP candidate for governor Fortuño, the head of the NPP Party.  (Docket No. 1 ¶¶29-34).

In regards to plaintiff Del Valle, the Complaint also indicates he competed for numerous positions to which he is qualified but was not selected because of his political affiliation, as well as being object of reprimands and threats of destitution from his present position.  (*Id.*, ¶¶57, 58).

Plaintiff Román claims that, after he concluded his detail at a Pre Technical School, although he was to be returned to his position as Auxiliary Superintendent, he was not

included in the list of eligibles nor was allowed to participate in a meeting or reorganization upon pretext of not having submitted a request for demotion to the position of School Director. (*Id.*, ¶¶66-67).

Plaintiff Rodríguez submits being interviewed for the new positions of Auxiliary Superintendents and never was selected because of political affiliation, as well as having witnessed comments during the interview rounds as to the need to be an NPP supporter to be selected. (*Id.,* ¶76).

Plaintiff Rosa-García avers that, after being removed from her career position as School Superintendent, she was reassigned to a position to the town of Yabucoa although she lives quite distant in another town, Gurabo. (*Id.*, ¶92).

Plaintiff Arroyo avers the position to which she was reassigned is now paid with federal funds and she has very different duties to the ones she held in the previous permanent/career position, including duties similar to the lower position of Auxiliary Superintendent. (*Id.*, ¶102).

Plaintiff Toste claims she was stripped of the functions inherent to her position suffering a diminishment of her prior duties. (Complaint, ¶110).

In essence, plaintiffs submit the First Amendment protection also covers besides short of dismissal, transfers and demotions based on political discrimination, which are considered adverse employment actions. Plaintiffs, being career employees holding the positions of Auxiliary Superintendents, were demoted to School Directors, which they consider as a lower hierarchical position, since the former had more standing, prestige and power. Plaintiffs were also transferred to different regions, resulting on occasion in an

Luis Rodríguez-Ramos et al., v. Dept. of Education, et al
Civil No. 11-1653 (CVR)
Opinion and Order
Page 10

onerous change of location, site or facilities, not merely as defendants claim they only endured a change from one job to another.

Whether a demotion based on the basis of political affiliation also falls within the rationale of Elrod v. Burns,[5] regarding First Amendment rights to freedom of speech and association, the progeny of cases of employment discrimination has considered reassignment and transfers for political reasons to include transfer to less desirable locations although no title or salary was affected or effects in tenure or right to re-employment or non-renewal of contracts or positions for these also have a chilling effect on the right to free association.  *See* McGill v. Board of Educ. of Pekin Elementary School, 602 F.2d 774, 780 (7th Cir. 1979); Alicea-Rosado v. García-Santiago, 562 F.2d 114 (1st Cir. 1977); Lemons v. Morgan, 629 F.2d 1389 (8th Cir. 1980).  *See also* Billings v. Town of Grafton, 515 F.3d 39 (1st Cir. 2008) (Reduced prestige in the objective sense upon a change of duties can be considered by the jury to constitute adverse employment action).

Since the averments of the Complaint on a request for dismissal are to be taken as true, without credibility determinations at this stage of the proceedings, this Court must consider the factual pleadings sufficient to defeat defendant Rivera-Sánchez' Motion to Dismiss for failure to state a claim.

Insofar as Eleventh Amendment immunity claimed by co-defendant Rivera-Sánchez in his official capacity, plaintiffs' opposition summarizes it may sue defendants in their official capacity for injunctive relief of reinstatement to their former capacity and are suing

---

[5]   427 U.S. 347, 96 S.Ct. 2673 (1976).  *See also* Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287 (1980).

them in their individual capacity for damages.  As such, only injunctive relief is to be sought from co-defendants in their official capacity if and when judgment on their behalf is warranted and reinstatement is considered a relief.  Thus, Eleventh Amendment does not apply to an official capacity claim where claim sought is but prospective injunctive relief. Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684 (1993) (narrow exception to Eleventh Amendment immunity of state officials as to prospective relief).

Defendant Rivera-Sánchez also argues as ground for dismissal plaintiffs should not be able to raise for the same conduct First Amendment and Equal Protection claims.

The Court of Appeals for the First Circuit did not clearly express itself as to the co-existence of First Amendment and Equal Protection claims for the same conduct, even when faced with both claims for injunctive relief in Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005).

However, in Nestor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.3d 32 (1st Cir. 1992), it stated that a substantive due process claim was coextensive with First Amendment claim for the same conduct regarding land-use permit denial.  Still, in denying a First Amendment claim and identical conduct to state an Equal Protection claim, it resolved on the grounds of the criteria of invidious discrimination the claim needed to be related to race, sex or like classification and not wanting to enlarge the protected categories not on the co-existence of these claims, although still not negating the co-existence of both claims for the same conduct.

In fact, in <u>Guillemard-Ginorio v. Contreras-Gómez</u>, the Appeals Court found proper to submit to a jury both an Equal Protection claim and a First Amendment claim based on the same violation since, although the former overlapped with a stronger First Amendment claim and was seen impermissible duplicative as to an award for damages, this could be cured with proper jury instructions and the structure of the verdict form.[6]

Thus, defendant Rivera-Sánchez' averment that plaintiffs are precluded from raising both a First Amendment and an Equal Protection claim for the same conduct is unsupported.

In consideration of the above discussed, co-defendant Rivera-Sánchez' Motion to Dismiss is DENIED.  (Docket No. 9).

**C.      Dismissal Request by Co-defendants DE, Lizardi, Chardón and Virella under R. 12(b)(6) for Lack of a *Prima Facie* Case and for Qualified Immunity (Docket No. 31).**

The above co-defendants raise being entitled to dismissal of plaintiffs' Section 1983 claims for lack of a *prima facie* case, that is, sufficient pleading under <u>Iqbal</u> for not linking these defendants with actionable conduct.[7] They also request that claims filed by plaintiffs' spouses and the conjugal partnerships be dismissed for lack of standing to sue under Section 1983.  Defendants present the recent disposition by the Court of Appeals for the First Circuit in <u>Redondo Waste Systems , Inc. v. López-Freytes,</u> 659 F.3d 136 (1st Cir. 2011)

---

[6]  585 F.3d 508, 532-33 (1st Cir. 2009) (discussing also the difference on previous case law of <u>Ronsefeld v. Egy</u>, 346 F.3d 11, 15 (1st Cir. 2003) and <u>Nestor Colón Medina & Sucesores, Inc. v. Custodio</u>).

[7]  The DE is mentioned in this motion to dismiss but no analysis as to said co-defendant is developed.  In any event, this Magistrate Judge has previously discussed the DE is entitled to Eleventh Amendment immunity and there is no need to further address any claim as to said co-defendant DE.

wherein it was ruled that for a defendant to be liable for the alleged discriminatory misconduct, the complaint must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable.

### 1.   *Prima facie* **Case.**

Co-defendants Lizardi, Chardón and Virella claim lack of plaintiffs' *prima facie* case and deficient pleading entitle them to dismissal for there is no plausible analysis in a context-specific narrative from which liability may be attributed to them on the discrimination claims.  These co-defendants submit the pleadings of the Complaint fail to establish their knowledge as to plaintiffs' political affiliation for any statement therein is but a conclusory allegation or if known the pleadings are still deficient in that plaintiffs' affiliation be established as the substantial or motivating factor behind the alleged adverse employment action.  In addition, there is no *prima facie* showing as to the individual actions by each of the above defendants as their particular action which allegedly deprived plaintiffs of their constitutional rights for no personal involvement has been shown, except for a collective reference to "defendants."

### a)   **Well Known Political Affiliation.**

These co-defendants have also discussed the pleadings are insufficient to establish they knew the political affiliation of plaintiffs.

As to knowledge by defendants of political affiliation, the Complaint provides information that plaintiffs Del Valle was a well known member of the PDP who ran as candidate for mayor of the Municipality of Bayamón and was a member of the

Administrative Junta of the PDP. (Docket No. 1 ¶50).  Co-defendant Román was well aware of plaintiff Del Valle's affiliation for she made comments to him as to the same.  (*Id*., ¶54).

Plaintiff Román-Meléndez is a well known PDP supporter for he has worked in electoral schools and was a campaign director for his father-in-law who ran for mayor of Adjuntas and had a trust position under the PDP, which facts were known to defendants. (*Id.,* ¶60).

Plaintiff Rodríguez was a well known supporter of the PDP, being a pre-candidate for mayor of the Municipality of Adjuntas, member of the Board of the PDP's public employees association, the PDP's education force and actively participated as poll watcher, in political caravans, walks and ward president.  His brother is also President of the PDP's public employees, which facts are known by defendants.  (*Id*., ¶70).  Co-defendant Román is aware of plaintiff Rodríguez' affiliation for they spoke about their political situations. (*Id*., ¶74).  Co-defendant Cartagena was also aware of plaintiff Rodríguez' affiliation upon comments made to her secretary. (*Id*., ¶75).   Plaintiff Ortega's political affiliation is well known for she has occupied several trust positions during PDP administration.  (*Id*., ¶79).

Plaintiff Rosa-García's political affiliation with the PDP is well known for being also the niece of the mayor of Gurabo, fact known at the DE and occupied a trust position with the PDP administration. (*Id*., ¶87).

When a public employee asserting a First Amendment political discrimination claim is prominent in the opposition in a highly-charged political atmosphere, and is known to defendant to be so, a jury can infer from these facts, plus timing, that adverse action was politically motivated.  <u>Welch v. Ciampa</u>, 542 F.3d 927 (1st Cir. 2008).  Hence, the fact that

plaintiffs and defendant are of competing political persuasions, may be probative of discriminatory animus. *See* Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1ˢᵗ Cir. 1993); *see also* Rodríguez-Ríos v. Cordero, 138 F.3d 22 (1ˢᵗ Cir. 1998).

Although some of the plaintiffs have been forthcoming as to the reasons their political affiliation to the PDP were well known, while other plaintiffs' affiliation was rather attenuated, the lack, as discussed below, of a *prima facie* case of a Section 1983 claim as to co-defendants Lizardi, Chardón and Virella, does not require to individualize the claim as to political affiliation knowledge for in any event,[8] even if political affiliation knowledge is established as to each one of the plaintiffs by each one of the defendants, the Section 1983 claim will be dismissed as to these three co-defendants Lizardi, Chardón and Virella.

### b)      Personal Involvement of Co-defendants Chardón, Lizardi and Virella with Discrimination.

Co-defendants Chardón, Lizardi and Virella indicate and submit the Complaint fails to assert personal involvement of these co-defendants with the alleged discriminatory actions.  Thus, without any factual indication of any attributable action to these co-defendants or that they held a discriminatory animus against plaintiffs, the claims filed against them should be dismissed.

Plaintiffs' opposition as to above is but a generalized averment the facts of the Complaint state some defendants engaged in activities which were outlined independently,

---

[8]  Although the politically charged atmosphere known at the DE through each change of political administration in the Commonwealth of Puerto Rico is of general knowledge, the Court of Appeals for the First Circuit ruled that, regardless of political agenda or harboring of political biases in any government agency, it is plaintiff's burden to produce evidence of a causal connection between the biases and the challenged employment action.  Mercado-Berríos v. Cancel-Alegría, 611 F.3d 18, 23-24 (1ˢᵗ Cir. 2010).

but most of the facts mention all defendants, thus including the co-defendants that were individualized in the motion to dismiss.  After a careful review, the opposition is considered insufficient to rebut the co-defendants' contention as to the required personal involvement of each of them with at least one of the plaintiffs from which plausibility as to the alleged discrimination could be reasonably concluded.

As such, taking the averments of the Complaint as true, we proceed to examine these co-defendants' involvement in the alleged adverse employment action and/or acts of discrimination which may be attributed to a discriminatory animus.

### I) Co-defendant Chardón.

The Complaint refers to co-defendant Chardón being sued in his personal and official capacity for having been the Secretary of DE and in such capacity the nominating authority of said Agency.  (Docket No. 1 ¶16).[9]

Insofar as the respective plaintiffs' claims against co-defendant Chardón, plaintiff Del Valle's claims make no reference to any particular act by co-defendant Chardón of discrimination, except for having received a letter of November 16, 2009 leaving without effect his discharge which had been notified on September 25, 2009 as part of Law No. 7 provisions. (*Id.*, ¶47).  Thus, the pleadings of the Complaint are insufficient to present any personal involvement of co-defendant Chardón as to plaintiff Del Valle.

---

[9]  Chardón is no longer the Secretary of DE for which injunctive relief may not a reasonable possibility.

Plaintiffs Román, Rodríguez, Ortega, Rosario, Rosa-García, Arroyo and Toste do not indicate even one single act or even interaction as to co-defendant Chardón which could be attributed to him or from which a discriminatory animus could even be construed.

### ii)  Co-defendant Virella.

The Complaint refers to co-defendant Virella being sued in her personal and official capacity for being the Director of the Legal Division of the DE.  (Complaint ¶17).

Plaintiffs Rodríguez, Del Valle, Román, Ortega, Rosario, Rosa-García, Arroyo, and Toste do not indicate one single act or even interaction with co-defendant Virella which could be attributed to her or from which a discriminatory animus could even be construed.

### iii)  Co-defendant Lizardi.

The Complaint refers to co-defendant Lizardi identifying her as the Human Resources Director.  (Complaint ¶20).

Plaintiffs Rodríguez, Del Valle, Román, Ortega, Rosario, Rosa-García, Arroyo, and Toste do not indicate one single act or even interaction with co-defendant Lizardi which could be attributable to her or from which a discriminatory animus could even be construed.

Defendants may be found liable under Section 1983 on the basis of their own acts or omissions and not out of a *respondeat superior* theory.[10]  Even proof of mere negligence

---

[10]  Supervisors may, however, be liable if the behavior demonstrates deliberate indifference to conduct that is itself violative of plaintiffs' constitutional right.  Plaintiffs are still to show affirmatively a connection between the supervisor's conduct and the subordinate's violative act or omission.  Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978); *see* City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989).

in the supervisor's conduct is inadequate to establish liability under Section 1983. See Sánchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir. 2009).

Upon consideration of the pleadings and the lack of specific conduct by the above co-defendants, as well as any link with the actions of the remaining co-defendants, plaintiffs have not established a *prima facie* case as to co-defendants Chardón, Virella or Lizardi.

Thus, the Motion to Dismiss of co-defendants Chardón, Virella-Crespo or Lizardi is GRANTED.  (Docket No. 31).

**2.  Standing of Spouses and Conjugal Partnership in Section 1983 Claim.**

These co-defendants submit the respective spouses and conjugal partnerships of some of the plaintiffs have no standing to raise a Section 1983 claim for it provides relief solely to the person to whom the adverse action is directed.  Plaintiffs' opposition does not contest the above legal contention. (Docket No. 38).  Plaintiffs however, rather submit the spouses and conjugal partnerships are requesting relief as to the laws and Constitution of the Commonwealth of Puerto Rico, which are included under pendent jurisdiction.

A federal district court may exercise pendent jurisdiction over state law claims of a Section 1983 plaintiff's spouse, provided the claims share a common nucleus of operative facts with the Section 1983 claims.  Rodríguez-Ríos v. Cordero, 138 F.3d 22, 26-27 (1st Cir. 1998).

Summarily, plaintiffs' spouses and their respective conjugal partnership are indeed precluded from raising Section 1983 claims for they lack the proper standing for said relief but may still remain in the Complaint as to any pendent state law claims as to the co-defendants whose Section 1983 claim survives.

### 3.  First Amendment and Equal Protection claims.

These co-defendants reiterate their averment that plaintiffs are precluded from raising First Amendment and Equal Protection claims based on the same conduct.  We incorporate herein the discussion and findings on the same issue that was already disposed as to co-defendant Rivera-Sánchez and thus find, had their been a *prima facie* case against co-defendants Chardón, Virella or Lizardi (that there is not) the overlapping of actions alleged would not have precluded raising both claims.  *See* Guillemard-Ginorio v. Contreras-Gómez and discussion as to Docket No. 9.  However, there being no *prima facie* case from the pleadings of the Complaint as to these co-defendants, similarly to above contention as to Section 1983 lack of *prima facie* case, any such claim as to First Amendment and Equal Protection regarding co-defendants Chardón, Virella and Lizardi would also have to be dismissed.

### D.      Supplemental Motion to Dismiss and Joinder by Co-defendant Rivera-Sánchez (Docket No. 35).

Co-defendant Rivera-Sánchez filed a Supplemental Motion to Dismiss to incorporate the arguments of the co-defendants at Docket No. 31.  However, the averments as to this co-defendant rest on separate and distinct footing for he is particularly mentioned and referred to in the Complaint not only as the Secretary of DE, but also as to his interaction with individualized plaintiffs.  Co-defendant Rivera-Sánchez states he is only mentioned at ¶¶15, 58, 85, 94, 95 and 117 of the Complaint.  Plaintiffs' opposition to this supplemental motion refers to co-defendant Rivera-Sánchez, as well as to co-defendants Román and Cartagena. (Docket No. 47).

Luis Rodríguez-Ramos et al., v. Dept. of Education, et al
Civil No. 11-1653 (CVR)
Opinion and Order
Page 20

The Complaint submits co-defendant Rivera-Sánchez is the Secretary of the DE and the nominating authority of said agency.  (Docket No. 1 ¶15).  Plaintiff Del Valle[11] received a letter of intention by co-defendant Rivera-Sánchez, as harassment and discriminatory pattern against plaintiff, alleging non-compliance with his duties and apprising of destitution.  These allegations for a disciplinary action against Del Valle were not true and were but a pretext to take him out of his employment because of his political affiliation and for not reinstating plaintiff Del Valle to his rightful position as an Auxiliary Superintendent.  (*Id.*, ¶58).   The above pleading is more than just a mention of defendant Rivera-Sánchez.

Plaintiffs Rosa-García and Arroyo submit having sent letters to co-defendant Rivera-Sánchez questioning the employment actions of other co-defendants and not receiving any response.  (*Id.,* ¶¶94, 104).  Meanwhile, plaintiff Toste avers having also sent a letter to this co-defendant and receiving no answer to the same.  (*Id.,*¶102).  Still, plaintiff Toste received a letter from co-defendant Rivera-Sánchez transferring her to another school district from which it is claimed plaintiff suffered diminishment of his duties, being stripped of his functions, and those duties were instead assigned to NPP supporters. (Id., ¶110).

Co-defendants submitted a reply to plaintiffs' supplemental opposition. (Docket No. 57). They allege plaintiffs' opposition has attempted to stretch allegations of the Complaint.

---

[11]   Plaintiff Del Valle has claimed his political affiliation was well known for he ran for the position of Mayor of the town of Bayamón for the PDP and a member of the Administrative Junta for the PDP of Bayamón.  (*Id.*, ¶¶50, 53).

The reply refers to averments of plaintiff Del Valle that do not relate to other plaintiffs. Nevertheless, as to plaintiffs Del Valle and Toste they have complied with the pleading regarding their claims of discrimination as to co-defendant Rivera-Sánchez.[12]

Insofar as co-defendant Rivera-Sánchez, the pleadings sufficiently describe a discriminatory sequence and this defendant's participation that fulfill the plausibility required for such a Complaint to survive dismissal. Penalbert-Rosa v. Fortuño-Burset, 631 F.3d 592 (1st Cir. 2011).

Thus, Rivera-Sánchez' Supplemental Motion to Dismiss is DENIED. (Docket No. 35).

**E.    Co-defendants Román and Cartagena's Combined Motion to Dismiss (Docket No. 39).**

Co-defendants Román and Cartagena filed a Combined Motion to Dismiss also joining other co-defendants' legal submissions regarding dismissal at Docket No. 31. Co-defendant Román states the Complaint only mentions her at ¶¶18, 53, 54, 67, 74 and 119. Co-defendant Cartagena claims being mentioned only in the Complaint at ¶¶21, 75, 124 and 125. Plaintiffs filed their opposition (Docket No. 47) and thereafter defendants filed a reply at Docket No. 57 making some reference to these two co-defendants, Román and Cartagena.

---

[12]   The reply incorporates arguments as to co-defendants Román and Cartagena which were not part of the initial supplemental motion to dismiss at Docket No. 35. The reply will be considered as to these other co-defendants when addressing Docket No. 39.

### 1. Co-defendant Román.

A perusal of the Complaint as to these co-defendants shows that co-defendant Román appears as a party identified as Special Aide in the DE and having authority over plaintiffs. (Docket No. 1 ¶18).  Defendant Cartagena is similarly situated.  (*Id.*, ¶21).

Plaintiff Del Valle, a well known PDP member for she ran as candidate for mayor of the town of Bayamón and a member of said party Administrative Junta, was told by co-defendant Román, then Interim Sub-Secretary at the DE, he was not going to get the position for Auxiliary Superintendent which was announced because he was a PDP member. (*Id.*, ¶53).  This is much more than merely appearing named in the Complaint and refers to co-defendant Román as not only having knowledge of said plaintiff's affiliation but apprising him of not getting the position on account of said affiliation in violation of the First Amendment that serves as grounds for the Section 1983 claim.

Furthermore, co-defendant Román also made comments to plaintiff Del Valle if he was looking for a First Lady making reference to his running for mayor.  (*Id.*, ¶54). Although co-defendant Román attempts to dismiss the event of no consequence resulting from political affiliation for plaintiff Del Valle was indeed called for interview as to a similar position in a distant town, which he declined, plaintiff also submits he continued to participate in numerous other interviews for positions, approximately nineteen (19) of them and was never selected, notwithstanding having seniority and being fully qualified. (*Id.*, ¶¶55-57).  Plaintiff Del Valle was threatened by co-defendant Rivera-Sánchez with destitution some time thereafter under pretext of non-compliance with his duties. (*Id.*, ¶58).

Plaintiff Rafael Román-Meléndez (hereafter "Román-Meléndez") also submits co-defendant Román informed him the reasons for not being included in a list of eligibles to the position of Auxiliary Superintendent for he was required to have first resigned from his position and requested a demotion, a subterfuge used by DE and defendants to take plaintiffs from their career positions for being PDP affiliates and thereafter creating similar positions which were filled in with NPP affiliates.[13]

Similarly, plaintiff Luis Rodríguez Ramos (hereafter "Rodríguez") has identified co-defendant Román as being aware of his political affiliation for they spoke on the issue and made him aware they belonged to different political parties and use her knowledge against him. (*Id.*, ¶74).

In view of the above, co-defendant Román's Motion to Dismiss is unfounded.

### 2.  Co-defendant Cartagena.

The Complaint makes reference to Cartagena at ¶¶21, 75, 124 and 125. (Docket No. 1).

Cartagena is the Special Aide at the DE having authority over plaintiffs. (*Id.*, ¶21). Co-defendant Cartagena is referred to as making comments to her secretary, one Ms. Soraya Lugo, that she looked like a PDP supported for spending time with plaintiff Rodríguez. (*Id.*, ¶75). Except for a conclusory averment that defendant Cartagena used her position under color of law and either instructed, conspired and/or was deliberately indifferent to actions perpetrated against plaintiffs for political animus, no other reference to co-defendant

---

[13]  Although the drafting of the claims as to this plaintiff is not a model of comprehension, the narration of events is deemed sufficient to follow the minimum pleading requirement and participation of the defendant in a politically discriminatory adverse employment action.

Cartagena appears in the Complaint nor any action or interaction with any of the plaintiffs links co-defendant Cartagena with the alleged violation of rights under Section 1983. Thus, the pleading of the Complaint fails to contain the minimum requirements for a civil rights violation at *prima facie* level for a Section 1983 claim to be established as to co-defendant Cartagena.

Pursuant to above findings, and the legal contentions applicable and presented as to Section 1983 and Iqbal, the Combine Motion to Dismiss filed by co-defendants Román and Cartagena is GRANTED IN PART AND DENIED IN PART, to wit, it is GRANTED as to co-defendant Cartagena and it is DENIED as to co-defendant Román. (Docket No. 39).

## F.   Supplemental Motion to Dismiss by Rivera-Sánchez (Docket No. 41).

Once more co-defendant Rivera-Sánchez was allowed to file a Supplemental Motion to Dismiss wherein he simply continues to join any and all previous filing of the other co-defendants without addressing this time any particular contention. Since this Magistrate Judge has addressed co-defendants Rivera-Sánchez' contentions and analyzed the pleadings as to this particular co-defendant, we reiterate our previous discussion and deny same.

Thus, co-defendant Rivera-Sánchez' Supplemental Motion to Dismiss is DENIED. (Docket No. 41).

## G.  Co-defendant Cepeda's Motion to Dismiss (Docket No. 54).

Co-defendant Carmen Cepeda Ramos (hereafter "Cepeda") filed a brief Motion to Dismiss joining all arguments of previous co-defendants' motions and incorporating previous legal submissions. Cepeda states she appears mentioned in the Complaint solely at ¶¶22, 63, 64, 65 and 126 and mainly as to co-plaintiff Román-Meléndez. Plaintiffs

submitted a Supplemental Opposition and co-defendant Cepeda was allowed a reply, which fails to incorporate significant new allegations or defeat the record on the pleading. (Docket Nos. 55 and 60).

An examination of the pleading shows co-defendant Cepeda is identified as Special Aide in the DE with authority over plaintiffs. (Docket No. 1 ¶22). Plaintiffs' allegations of being deprived of their career positions as Auxiliary Superintendents at the DE show they were lured by error and by threat of destitution to request a change to their jobs to School Directors' position for they were admonished would be losing their employment on account of Law No. 7. It is the underground averment this was but a subterfuge of defendants to discriminate against them because of political affiliation and then create the same positions to be assigned to affiliates of the opposing party. (*Id.*, ¶¶35-37). The Complaint further states having the testimony of one former Special Aide affiliated with the opposing party, the NPP, to testify and establish such discriminatory scheme. (*Id.*, ¶38).

Insofar as co-defendant Cepeda, her participation in the scheme to remove plaintiffs from their career positions is wedged on her action of inducing in particular co-plaintiff Román-Meléndez by wrong information that he was part of the group of people who was to be affected by the destitution of Law No. 7 for which plaintiff Román-Meléndez was to "voluntarily" request the demotion to School Director in order to have the positions of Auxiliary Superintendents free to be allocated among NPP supporters. (*Id.*, ¶63). Co-defendant Cepeda obtained from plaintiff Román-Meléndez said letter. (*Id.*,¶64). When plaintiff Román-Meléndez thereafter requested an employment certificate, he found not being one of the employees to be affected by Law No. 7. Still, when plaintiff Román-

Meléndez attempted to apply for the openings of Auxiliary School Superintendents, he found the letter of demotion he had been asked had not been received and was told the only ones to be considered for said openings where those who had submitted same, which co-defendant Cepeda had initially promoted, induced and obtained, but did not process or submit. (*Id.*, ¶67).

As discussed in other co-defendants' request for dismissal under Iqbal, the minimum pleading standards for a politically motivated discriminatory action by co-defendant Cepeda is fulfilled.  Thus, defendant Cepeda's Motion to Dismiss is DENIED.  (Docket No. 54).

## CONCLUSION

In view of the foregoing, the dispositive motions filed by the co-defendants are disposed as follows:

1.  Motion to Dismiss by co-defendant Department of Education is GRANTED. (Docket No. 8).

2.  Motion to Dismiss by co-defendant Rivera-Sánchez is DENIED. (Docket No. 9).

3.  Motion to Dismiss by co-defendants Department of Education, Chardón, Lizardi, and Virella is GRANTED (Docket No. 31).

4.  Supplemental Motion to Dismiss and Joinder by co-defendant Rivera-Sánchez is DENIED.  (Docket No. 35).

5.      Motion to Dismiss Combined by co-defendants Román and Cartagena is

GRANTED IN PART and DENIED IN PART, to wit, it is GRANTED as to co-

defendant Cartagena and DENIED as to co-defendant Román. (Docket No.

39).

6.      Supplemental Motion to Dismiss by co-defendant Rivera-Sánchez is

DENIED. (Docket No. 41).

7.      Motion to Dismiss by co-defendant Cepeda is DENIED. (Docket No. 54).

Partial Judgment is to be entered DISMISSING the Complaint as to co-defendants

Department of Education, Carlos Chardón, María de los Angeles Lizardi, Brenda Virella

Crespo and Carmen Yolanda Cartagena.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of February of 2012.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE