IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS RODRIGUEZ RAMOS, ET AL.,

Plaintiffs,

v.

DEPARTMENT OF EDUCATION FOR
THE COMMONWEALTH OF PUERTO
RICO, ET AL.,

Defendants.

CIVIL NO. 11-1653 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiffs Luis Rodríguez Ramos, Juan Alexis Del Valle Meléndez, their respective spouses and conjugal partnerships, and plaintiffs Elizabeth Ortega Medina, Carmen Rosa Martínez, Josefina Arroyo Sauri and María T. Toste Arana (hereafter "plaintiffs" or identified by their respective last names when applicable) filed a Complaint for civil rights violations under Title 42, United States Code, Section 1983 against defendants,[1] for being subject of alleged discrimination based on their political affiliation while employed at the Department of Education of the Commonwealth of Puerto Rico (hereafter "DE"). (Docket No. 1).[2]

---

[1] The defendants included in the complaint were the DE, Jesús Rivera-Sánchez, Carlos E. Chardón, Brenda Virella-Crespo, Sonia Dalia Román, Magaly Rivera-Rivera, Maria de los Angeles Lizardi-Valdez, Carmen Yolanda Cartagena, Carmen Cepeda and Insurance Company ABC. (Docket No. 1).

[2] Plaintiffs also referred to Civil Rights Act of 1866, 42 U.S.C. §1983, a First Cause of Action for violation to the First and Fourteenth Amendment of the U.S. Constitution, a Second Cause of Action for Due Process under the U.S. Constitution, and a Third Cause of Action under the laws and Constitution of Puerto Rico, in particular, Public Service Personnel Laws and merit system regulations, Law No. 184 and Articles 1802 and 1803 of the P.R. Civil Code.

Luis Rodríguez-Ramos, et al., v. Jesus Rivera-Sánchez, et al.
Civil No. 11-1653 (CVR)
Opinion and Order
Page No. 2

---

The co-defendants DE, Carlos E. Chardón (hereafter "Chardón"), Brenda Virella Crespo (hereafter "Virella") and María de los Angeles Lizardi Valdés (hereafter "Lizardi") filed a thirty-five pages "Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) and/or because Defendants are shielded by Qualified Immunity" raising multiple grounds for dismissal and qualified immunity. (Docket No. 31).

In turn, co-defendant Jesús Rivera Sánchez (hereafter "Rivera") filed a three-page "Motion to Supplement Motion to Dismiss in Light of New Case and to Join All Arguments in Another Fed.R.Civ.P. 12(b)(6) Motion." Co-defendant Rivera did not make any legal reference to qualified immunity and solely addressed his lack of personal participation in the "unadorned assertions of the Complaint." (Docket No. 35). Rivera then filed a "Reply to Plaintiffs' Supplemental Opposition to Motion to Dismiss (Docket No. 47)" discussing the sufficiency of plaintiffs' pleading in the Complaint under Ashcroft v. Iqbal and Rule 12(b)(6).[3] (Docket No. 57).

Likewise, co-defendants Sonia Dalila Román (hereafter "Román") and Carmen Yolanda Cartagena (hereafter "Cartagena") filed a "Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or Because Defendants Are Shielded by Qualified Immunity and a Motion for Joinder." Said motion did not include any legal discussion on qualified immunity and, besides the reference in its title, its sole reference as to qualified immunity appears at the

---

[3] Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Luis Rodríguez-Ramos, et al., v. Jesus Rivera-Sánchez, et al.
Civil No. 11-1653 (CVR)
Opinion and Order
Page No. 3

---

final sentence as follows: "[a]ppearing Defendants also pray that they be found protected against the imposition of monetary damages by the shield of qualified immunity." (Docket No. 39).

Similarly, co-defendant Carmen Cepeda Ramos (hereafter "Cepeda") filed a "Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6) and/or Because Defendant is Shielded by Qualified Immunity and Motion for Joinder." (Docket No. 54). Therein, Cepeda made specific reference that the motion be considered as inserted to Section III(1)(ii) of Docket No. 31, October 21, 2011, Motion to Dismiss.[4] Such particular insertion referred to legal arguments at Docket No. 31, pp. 10-13, wherein the issue of essential elements of political discrimination claim, that is, were co-defendants Chardón, Virella and Lizardi discussed the lack of *prima facie* case for political discrimination because of these co-defendants' participation had been omitted in the pleadings of the Complaint.[5] (Docket No. 54, p. 1). Co-defendant Cepeda failed to address any legal argument on qualified immunity, except for at the prayer's final sentence making reference to the following: "[f]or the same reasons, co-defendant Carmen Cepeda-Ramos also prays she be found shielded against the imposition of monetary damages by the cloak of qualified immunity". (Docket No. 54, p. 4).

---

[4] Section III(1)(ii), p. 10, entitled "Plaintiffs failed to plead the personal involvement required under Section 1983. (Docket No. 31, p. 10); co-defendants Chardon argued the omission to be named in the Complaint as having participated in any acts considered discriminatory (*Id.*, p. 13-20); co-defendant Virella argued as to same (*Id.*, pp. 20-28). All co-defendants argued as to qualified immunity as to the Complaint reference solely as to Chardon, Virella and Lizardi being mentioned for omission or failure to take action (*Id.*, pp. 29-32).

[5] Section III, 5 entitled "All Appearing Defendants are Entitled to Qualified Immunity in their Individual Capacities". (Docket No. 31, p. 29).

In plaintiffs' opposition to dismissal as to Docket No. 31, there was a one paragraph discussion on the issue of qualified immunity and seemly it appears plaintiffs were under the perception the remaining co-defendants' supplemental motion had not raised the issue, that is, co-defendants Rivera, Román, Cartagena and Cepeda, for their discussion addressed the sufficiency of the pleading under Iqbal. (Docket No. 60).[6]

On February 1, 2012, this Court issued an Opinion and Order in which co-defendants Chardón, Virella and Lizardi were granted the requested dismissal on grounds plaintiffs had failed to establish a *prima facie* case as to them, as officers of the DE and as to their personal participation in the events narrated in the Complaint for they were sued in their individual and official capacities. Co-defendant DE was also granted dismissal as to plaintiffs' Complaint under Eleventh Amendment grounds. In addition, co-defendant Cartagena was granted dismissal on grounds plaintiffs failed to establish a *prima facie* case as to her. As such, there was no need at the time to discuss qualified immunity in regards with co-defendants DE, Chardón, Virella, Lizardi and Cartagena. (Docket No. 63).

On this scenario, the surviving co-defendants were Rivera, Román and Cepeda. The requests for dismissal of these remaining co-defendants, who had incorporated the arguments of the co-defendants at Docket No. 31, resulted in a denial of their motions to dismiss without discussing qualified immunity as applied to these co-defendants. At the time, the issue of qualified immunity was not discussed by the undersigned in the Opinion

---

[6] The supplemental motion entitled "Defendant Carmen Cepeda Ramos' Reply to Plaintiffs' Supplemental Opposition to Motion to Dismiss (Docket No. 55)" did not address the qualified immunity opposition, response or supplemental opposition in plaintiffs' motions as to defendants' requests for dismissal at Docket Nos. 38 and 47.

and Order as to co-defendants Rivera, Román and Cepeda because the applicability of qualified immunity , in our view, was not properly raised by them. These co-defendants made just a brief mention of qualified immunity without discussing the grounds as to why qualified immunity applied to each one of them and only mentioned the qualified immunity defense in passing. (Docket No. 63, Opinion and Order, pp. 21-27 denying dismissal as to Docket Nos. 35, 39, 41, and 54).

Thereafter, the surviving co-defendants Rivera, Román and Cepeda filed an appeal of the district court's decision denying their requests for dismissal. The mandate from the Court of Appeals of the First Circuit referred the matter back to the court for discussion of the issue of qualified immunity as to the three surviving co-defendants. (Docket No. 93).

Accordingly, it is now proper to discuss the issue of qualified immunity as presented at Docket No. 31 by co-defendants Rivera, Román and Cepeda without further delay.

## LEGAL DISCUSSION

**A.  Sufficiency of the Allegations in the Complaint against Rivera, Román and Cepeda.**

As to co-defendants Rivera, Román, and Cepeda, the Opinion and Order already ruled the allegations of the Complaint as to them met the sufficiency pleadings as to their participation in the political discrimination claims having established the Complaint met the *prima facie* burden in presenting claims as to these defendants Rivera, Román and Cepeda insofar as their participation in the alleged discriminatory conduct. Succinctly, it

was therein established that: "[p]laintiff Del Valle[7] received a letter of intention by co-defendant Rivera-Sánchez, as harassment and discriminatory pattern against plaintiff, alleging non-compliance with his duties and apprising of destitution. These allegations for a disciplinary action against Del Valle were not true and were but a pretext to take him out of his employment because of his political affiliation and for not reinstating plaintiff Del Valle to his rightful position as Auxiliary Superintendent. (Docket No. 1, Complaint ¶58). The above pleading is more than just a mention of defendant Rivera-Sánchez without attributing him discriminatory actions as in the situation of other co-defendants." (Docket No. 63, Opinion and Order, p. 20).

Insofar as co-defendant Román, the adopted Motion to Dismiss, states "…the Complaint provides some factual matter alleging that she knew the political affiliation of plaintiff del Valle is Sonia Dalila Román, not one of the Appearing Defendants [at Docket No. 31]." (Docket No. 31, p. 7; Complaint ¶50).[8] As to co-defendant Román, the Opinion and Order on the above issue also determined, when denying dismissal because of failure to state a cause of action, that Román was also aware of plaintiff Rodríguez' affiliation for they spoke about their political situations. Additionally, Román, then Interim-Sub-Secretary of the DE, told plaintiff Del Valle he was not going to get the position for Auxiliary

---

[7] Plaintiff Del Valle claimed his political affiliation was well known for he ran for the position of Mayor of the town of Bayamón for the Popular Democratic Party (hereafter "PDP") and was a member of the Administrative Junta for the PDP of Bayamón. (Complaint ¶¶50, 53).

[8] Since co-defendant Román adopted all the allegations at Docket No. 31, she certainly falls prey to her own lack of discussion on the issues raised by the other co-defendants as applicable or not to her. The adopted Motion to Dismiss has alleged that co-defendant Román knew the political affiliation of plaintiff. Notwithstanding, said issue was further addressed as to the *prima facie* claim that was already disposed as to said co-defendant in the Opinion and Order issued by this Magistrate Judge.

Luis Rodríguez-Ramos, et al., v. Jesus Rivera-Sánchez, et al.
Civil No. 11-1653 (CVR)
Opinion and Order
Page No. 7

---

Superintendent, which was announced, because he was a PDP member. Román also made comments to plaintiff Del Valle if he was looking to become a First Lady, making reference to his running for mayor of the opposing party the PDP. Plaintiffs Román and Rodríguez also made specific reference of co-defendant Román's direct participation as to their claims of political discrimination. (Docket No. 63, Opinion and Order, p. 22; Complaint ¶¶ 53, 54, and 74).

Co-defendant Cepeda also joined legal submissions of all parties and her participation on the alleged discriminatory practice in the Complaint was found limited to plaintiff Román's claim that Cepeda lured him into "voluntarily" requesting a demotion from the position of Auxiliary Superintendent to School Director to avoid being dismissed under P.R. Law No. 7 which did not apply to him, as a pretext for discrimination because of his political affiliation. (Docket No. 63, Opinion and Order, pp. 25-26; Complaint ¶¶ 63 and 64).

**B.    Qualified Immunity - First Amendment Claim.**

The qualified immunity doctrine allows public officials who are named defendants to have immunity from suit so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In ruling on qualified immunity, courts must examine whether the facts alleged or shown by plaintiffs make out a violation of a constitutional right, and if so whether the right was one clearly established

Case 3:11-cv-01653-CVR   Document 94   Filed 03/21/13   Page 8 of 13

Luis Rodríguez-Ramos, et al., v. Jesus Rivera-Sánchez, et al.
Civil No. 11-1653 (CVR)
Opinion and Order
Page No. 8

at the time of defendants' alleged violation. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808 (2009).[9]

In addressing above discussion, co-defendants Rivera, Román and Cepeda adopted the other defendants' proposition argued at Docket No. 31 that the Complaint allows for qualified immunity for it does not establish with sufficiency a clear violation of law and, thus, a plausible entitlement to relief under Iqbal. (Docket No. 31, p. 30).

The consideration as to whether the pleadings and facts stated in the Complaint make out a violation of constitutional rights by the particular defendant's conduct, as summarized above in Part A as to co-defendants Rivera, Román and Cepeda, meets the first prong of qualified immunity for the Complaint has established the necessary elements for a *prima facie* case as to these co-defendants and the particular acts that are presented as violations under Section 1983.

A further analysis as to qualified immunity would require to examine whether the alleged constitutional violation to plaintiffs' First Amendment right was clearly established at the time of the actions wherein co-defendants Rivera, Román and Cepeda participated as to plaintiffs. Maldonado v. Fontanes, 568 F.3d 263 (1st Cir. 2009).

Besides there being sufficient factual content for this Court to consider the participation of co-defendants Rivera, Román and Cepeda has been sufficiently pleaded in the Complaint for a violation of civil rights right on grounds of political discrimination

---

[9] In resolving qualified immunity, courts need not first determine whether facts alleged or shown by plaintiff make out violation of constitutional right for courts may exercise sound discretion in deciding which of the two prongs to address first in light of circumstances in the particular case at hand. The previous procedure in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001) is not inflexible. Pearson, 555 U.S. at 224.

Luis Rodríguez-Ramos, et al., v. Jesus Rivera-Sánchez, et al.
Civil No. 11-1653 (CVR)
Opinion and Order
Page No. 9

---

meeting the *prima facie* test,[10] we now need to address if their conduct deprived plaintiffs of a proprietary right to public employment and, if such, if the right was already clearly established by the years 2009 and 2010, the time the alleged discriminatory acts were undertaken.

Plaintiffs claim they were discriminated from their positions in the DE as Auxiliary Superintendents, which were career positions from which they were removed because of political discrimination upon being associated with the opposing political party, the PDP. Subsequently, defendants filled similar positions named "staff developers" as trust positions, which had the same exact duties, but for those who were deemed loyal to the new political party administration, the New Progressive Party.

The Court of Appeals for the First Circuit has indicated that the prohibition against political discrimination was clearly established in 1997 when defendants therein acted to violate plaintiffs' constitutional right. *See* Acevedo-García v. Monroig, 351 F.3d 547, 562 (1st Cir. 2003).

It is clear that political discrimination and retaliation in public employment have long been considered a violation of constitutional rights by the time defendants' actions ensued against plaintiffs as alleged in the Complaint. Rutan v. Repub. Party of Ill., 497 U.S. 62, 74-76, 110 S.Ct. 2729 (1990); González-Pina v. Rodríguez, 407 F.3d 425 (1st Cir. 2005).

---

[10] Arguments were considered inapplicable to these co-defendants at Docket No. 31, pp. 31-32, for qualified immunity as presented by the dismissed co-defendants and not as to Rivera, Román and Cepeda were grounded on the fact the Complaint did not sufficiently plead claims except for reference to acts of omissions or failure to act but not any particular action undertaken by these other co-defendants who were granted dismissal. This situation is contrary to the particular allegations raised as to co-defendants Rivera, Román and Cepeda as particularly above discussed. (Docket No. 31, pp. 31-32).

Also, the removal of plaintiffs, who were considered associated with the opposing political party of defendants, were removed from their positions as Auxiliary Superintendents while at the same time similar positions were created to be filled with those that were loyal to the governing party at the time, together with comments by above defendants to plaintiffs as their political party affiliation is precisely the kind of situations that could put substantial pressure on the state employees on even one of thick skin to conform to the prevailing political view. Agosto-de-Feliciano v. Aponte Roque, 889 F.2d 1209, 1218 (1st Cir. 1989).[11]

The issue as to the plaintiffs' right to public employment free from political discrimination and retaliation is considered clearly established in regards with the qualified immunity relevant prong-test for the question of whether a right is clearly established is an issue of law for the court to decide. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019 (1st Cir. 1994).[12]

"A right is 'clearly established' if the contours of the right are sufficiently clear such that 'a reasonable official would understand that what he is doing violates that right.' " Costa-Ureña v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009) (internal citations omitted). Co-defendants Rivera, Román and Cepeda are thus not be entitled to qualified immunity

---

[11] Even actions of harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for First Amendment claims if the motive was political discrimination, provided these actions are sufficiently severe to cause reasonably hardy individual to compromise their political beliefs and associations in favor of the prevailing party. Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 42 (1st Cir. 2007) (citing to Agosto-de-Feliciano v. Aponte Roque, 889 F.2d at 1209).

[12] DeMayo v. Nugen, 517 F.3d 11 (1st Cir. 2008), under qualified immunity tests the Court is to determine whether an objectively reasonable official would have believed his actions violated established rights of plaintiffs. In other words, that defendants had fair warning their conduct violated such rights when the courts have previously ruled that materially similar conduct was unconstitutional. Jennings v. Jones, 499 F.2d 2 (1st Cir. 2007).

because a plaintiff's First Amendment right to be free from political discrimination is clearly established. Roldán v. Cerez-Suárez, 115 F.3d 58, 65–66 (1st Cir. 1997).

Having already discussed the allegations of the Complaint, taken as true, present constitutional violations of plaintiffs' rights to be free in public employment from political discrimination being one already clearly established long before 2009-2010, it remains to now consider whether a reasonable official, such as defendants, would have known their actions violated constitutional rights. *See* Mihos v. Swift, 358 F.3d 91 (1st Cir. 2004).

The test prongs for qualified immunity, besides the above discussed, also requires the subsidiary issue as to a determination of whether a reasonable officer, similarly situated as defendants, would understand that the challenged conduct violated the established right. Suboh v. District Attorney's Office of Suffolk Dist., 298 F.3d 81 (1st Cir. 2002). A finding of qualified immunity would be warranted if a reasonable officer would have believed the conduct claimed was lawful but not warranted if no reasonable officer could belief that his conduct was lawful. In other words, qualified immunity will issue when officers of reasonable competence could disagree on the lawfulness of the action, but it will not issue if it is obvious that no reasonably competent officer would have concluded that the action was unlawful. Lopera v. Town of Coventry, 640 F.3d 388, 398 (1st Cir. 2011).

The First Amendment affords public employees in non-policy making positions protection from personnel decisions rooted in partisan political concerns. Discharge, demotion or removal from a position is an adverse employment action within Section 1983 and grounded on First Amendment when it is predicated on political discrimination. Even

significant alteration in public employees job duties or responsibilities constitutes an adverse employment action for a Section 1983 claim, if based on political affiliation considerations of the employer or appointing authority.

Nowhere in the adopted arguments at Docket No. 31 is there any proposition that the acts of defendants Rivera, Román and Cepeda when taking the decision to remove, induce or force plaintiffs from their public employment permanent career position as Auxiliary Superintendents in the DE; when transferring plaintiffs back to the position of School Directors and when creating similar positions denominated trust positions of staff developers with same duties and responsibilities as the former Auxiliary Superintendents jobs, were because these defendants held a reasonable, even if mistaken, judgment for their actions other than the proposed allegations in the Complaint of political discrimination.

Finally, in view of the above, the remaining co-defendants' contention as to qualified immunity --through brief joinder by incorporation-- is not properly developed in support of their position. They simply claim, in a conclusory fashion, they are entitled to qualified immunity. Accordingly, the qualified immunity defense fails at this stage. If appropriate, the remaining co-defendants may restate this defense at a later stage.[13]

---

[13] Because the doctrine of qualified immunity recognizes that litigation is costly to defendants, officials may plead the defense at various stages in the proceedings. Defendants may raise the defense on the pleadings, in a motion to dismiss; secondly, if a defendant cannot obtain a dismissal on the pleadings, he/she may move for summary judgment and "is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." Defendants are also free to present the qualified immunity defense at trial, despite the fact that the defense is waived for pre-trial purposes. Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834 (1996); see Guzmán-Rivera v. Rivera-Cruz, 98 F.3d 664 (1st Cir. 1996).

In accordance with above discussion, the requests for qualified immunity regarding plaintiffs' First Amendment claim as to co-defendants Rivera, Román and Cepeda are DENIED.

## CONCLUSION

Having perused defendants' arguments and considered above discussed case law, this Magistrate Judge denies the requests by co-defendants Rivera, Román and Cepeda for qualified immunity.[14]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of March of 2013.

                                                      s/CAMILLE L. VELEZ-RIVE
                                                      CAMILLE L. VELEZ-RIVE
                                                      UNITED STATES MAGISTRATE JUDGE

---

[14] All relevant arguments as to these co-defendants already made part of the Opinion and Order of February 2, 2012 (Docket No. 63) are incorporated and made an integral part of this Opinion and Order.